UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNEY HARRIS, individually and on behalf of all others similarly situated, | Civil Action No. 14 CV 8740 |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., NICHOLAS S. SCHORSCH, BRIAN S. BLOCK, DAVID S. KAY and LISA P. MCALISTER, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff, individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation of Plaintiff's counsel, which included, among other things, review of press releases, Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly available information regarding American Realty Capital Properties, Inc. ("ARCP" or the "Company"). Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of purchasers of the common stock and/or call options of ARCP between February 27, 2014 through October 28, 2014, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims alleged herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78(t)(a)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.110b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.     Venue is proper in this Court pursuant to Section 27 of the Exchange Act and 28 U.S.C. §§1391(b), as the Company's shares are traded over the NASDAQ Stock Market ("NASDAQ"), an electronic securities exchange located in this District.

5.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

6.     Plaintiff, Berney Harris, as set forth in the accompanying certification incorporated by reference herein, purchased common stock and call options of ARCP during the Class Period and has been damaged thereby.

7.     Defendant ARCP is a Maryland corporation with its principal executive offices located in this District.  The Company's common stock is listed and actively traded on the NASDAQ Global Select Market under the symbol "ARCP."  ARCP described itself as a leading, self-managed commercial real estate investment trust ("REI") focused on investing in single tenant freestanding commercial properties subject to net leases with high credit quality tenants. ARCP owns approximately 4,400 properties totaling 99.1 million square feet of leasable space.

2

Additional ARCP acquires and manages assets on behalf of the Cole Capital non-traded REITs, managing nearly $30 billion of high-quality real estate located in 49 states, as well as Washington D.C., Puerto Rico and Canada.

8.     Defendant Nicholas S. Schorsch ("Schorsch"), during the Class Period and at all times relevant hereto, served as Chairman of ARCP's Board of Directors, and as ARCP's Chief Executive Officer until September 30, 2014.  Pursuant to the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), Schorsch signed  certifications of the Company's Annual Report for the fiscal year ended December 31, 2013, filed with the SEC on Form 10-K on February 27, 2014 (the "2013 Form 10-K"), and the Company's quarterly report for the period ended March 31, 2014, filed with the SEC on Form 10-Q on May 8, 2014 (the "First Quarter 10-Q"), and the Company's quarterly report for the period ended June 30, 2014, filed with the SEC on Form 10-Q on July 29, 2014 (the "Second Quarter 10-Q").

9.     Defendant Brian S. Block ("Block"), during the Class Period and at all times relevant hereto until October 28, 2014, served as the Company's Executive Vice President, Chief Financial Officer, Treasurer and Secretary.  Pursuant to Sarbanes-Oxley, Block signed certifications of the 2013 Form 10-K, the First Quarter 10-Q, and the Second Quarter 10-Q.

10.     Defendant David S. Kay ("Kay"), during the Class Period and at all times relevant herein, served as the Company's President until September 30, 2014, and as the Company's Chief Executive Officer since October 1, 2014.  Pursuant to Sarbanes-Oxley, Kay signed a certification of the 2013 Form 10-K.

11.     Defendant Lisa Pavelka McAlister ("McAlister"), during the Class Period and at

all times relevant hereto until October 28, 2014, served as the Company's Senior Vice President and Chief Accounting Officer. Pursuant to Sarbanes-Oxley, McAlister signed certifications of the 2013 Form 10-K and the Second Quarter 10-Q.

12. Defendants Schorsch, Block, Kay and McAlister are collectively referred to herein as the "Individual Defendants."

13. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operation trends, financial statements markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

14. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of ARCP, by virtue of their high level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statement and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged

herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

15.     As officers and controlling persons of a publicly held company whose shares were, and are, registered with the SEC pursuant to the Exchange Act, and were, and are, traded over the NASDAQ, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded shares would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

16.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with ARCP, each of the Individual Defendants had access to the adverse undisclosed information about ARCP's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about ARCP and its business issued or adopted by the Company materially false and misleading.

17.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

18.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud and deceit on purchasers of ARCP common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding ARCP's business, operations, management and the intrinsic value of ARCP common stock; and (ii) caused Plaintiff and the other members of the Class to purchase ARCP common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the Company's common stock and/or call options during the Class Period who were damaged thereby (the "Class"). Excluded from the Class are Defendants and all officers and directors of the Company at all times relevant hereto, members of their families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are potentially thousands of members of the proposed Class. The Company's common stock is actively traded on the NASDAQ under the symbol ARCP. The Class members may be identified from records maintained by ARCP or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complaint of herein.

22.     Plaintiff will fairly and adequately protect the interests of the other members of the Class, has no interests that are antagonistic to the interests of other members of the Class, and has retained counsel competent and experienced in class action and securities litigation.

23.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of ARCP; and

c.     to what extent members of the Class have sustained damages and the proper measure of damages.

24.     A class action is superior to other available methods for the fair and efficient

7

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by the individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individual redress the wrongs

done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

25.     On February 27, 2014, the Company announced its financial results for the fourth

quarter and full fiscal year ended December 31, 2014, on Form 10-K filed with the SEC (the

"2013 Form 10-K" herein), signed and certified by, among others, the Individual Defendants,

*i.e.,* Schorsch, Block, Kay and McAlister. The 2013 Form 10-K states, "[b]ased on our

assessment, our management believes that, as of December 31, 2013, our internal controls over

financial reporting is effective." The Company further reported, pursuant to the 2013 Form 10-

K:

> In accordance with Rule 13a-15(b) and 15d-15(b) of the Exchange
> Act, management, with the participation of our Chief Executive
> Officer and Chief Financial Officer, has evaluated the
> effectiveness of our disclosure controls and procedures (as defined
> in Rules 13a-15(b) and 15d-15(b) of the Exchange Act) as of the
> end of the period covered by this Annual Report on Form 10-K.
> Based on such evaluation, our Chief Executive Officer and Chief
> Financial Officer have concluded, as of the end of such period, that
> our disclosure controls and procedures are effective in recording,
> processing, summarizing and reporting, on a timely basis,
> information required to be disclosed by us in our reports that we
> file or submit under the Exchange Act.
>
> Our management is responsible for establishing and maintaining
> adequate internal control over financial reporting, as defined in
> Rules 13a-15(b) and 15d-15(b) under the Securities Exchange Act
> of 1934, as amended. Our internal control over financial reporting
> is designed to provide reasonable assurance regarding the
> reliability of financial reporting and the preparation of financial
> statements in accordance with generally accepted accounting
> statements.
>                           * * *

Based on our assessment, our management believes that, as of December 31, 2013, our internal control over financial reporting is effective.

26.   Regarding adjusted funds from operations ("AFFO"), the 2013 Form 10-K

reported:

We exclude certain income or expense items from AFFO that we consider more reflective of investing activities, other non-cash income and expense items and the income and expense effects of other activities that are not a fundamental attribute of our business plan. These items include unrealized gains and losses, which may not ultimately be realized, such as gains or losses on derivative instruments, gains or losses on contingent valuation rights, gains and losses on investments and early extinguishment of debt. In addition, by excluding non-cash income and expense items such as amortization of above and below market leases, amortization of deferred financing costs, straight-line rent and non-cash equity compensation from AFFO we believe we provide useful information regarding income and expense items which have no cash impact and do not provide us liquidity or require our capital resources. By providing AFFO, we believe we are presenting useful information that assists investors and analysts to better assess the sustainability of our ongoing operating performance without the impacts of transactions that are not related to the ongoing profitability of our portfolio of properties. We also believe that AFFO is a recognized measure of sustainable operating performance by the REIT industry. Further, we believe AFFO is useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies that are not as involved in activities which are excluded from our calculation. Investors are cautioned that AFFO should only be used to assess the sustainability of our operating performance excluding these activities, as it excludes certain costs that have a negative effect on our operating performance during the periods in which these costs are incurred.

In addition, we exclude certain interest expenses related to securities that are convertible to common stock as the shares are assumed to have converted to common stock in our calculation of weighted average common shares-fully diluted. As the Company's convertible notes have a cash or stock settlement option and the Company has the ability and intent to settle its convertible notes in cash, the interest expense related to our convertible notes have not been excluded from AFFO, and accordingly, the shares are not assumed to have converted to common stock in our calculation of weighted average common

shares-fully diluted.

In calculating AFFO, we exclude expenses, which under GAAP are characterized as operating expenses in determining operating net income. These expenses are paid in cash by us, and therefore such funds will not be available to distribute to investors. All paid and accrued merger and acquisition fees and certain other expenses negatively impact our operating performance during the period in which expenses are incurred or properties are acquired and will have negative effects on returns to investors, the potential for future distributions, and cash flows generated by us, unless earnings from operations or net sales proceeds from the disposition of other properties are generated to cover the purchase price of the property and certain other expenses. Therefore, AFFO may not be an accurate indicator of our operating performance, especially during periods in which mergers are being consummated or properties are being acquired or certain other expenses are being incurred. AFFO that excludes such costs and expenses would only be comparable to companies that did not have such activities. Further, under GAAP, certain contemplated non-cash fair value and other non-cash adjustments are considered operating non-cash adjustments to net income in determining cash flow from operating activities. In addition, we view fair value adjustments as items which are unrealized and may not ultimately be realized. We view both gains and losses from fair value adjustments as items which are not reflective of ongoing operations and are therefore typically adjusted for when assessing operating performance. Excluding income and expense items detailed above from our calculation of AFFO provides information consistent with management's analysis of the operating performance of the properties. Additionally, fair value adjustments, which are based on the impact of current market fluctuations and underlying assessments of general market conditions, but can also result from operational factors such as rental and occupancy rates, may not be directly related or attributable to our current operating performance. By excluding such changes that may reflect anticipated and unrealized gains or losses, we believe AFFO provides useful supplemental information.

As a result, we believe that the use of FFO and AFFO, together with the required U.S. GAAP presentations, provide a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing, and investing activities.

FFO and AFFO are non-GAAP financial measures and do not represent net income as defined by U.S. GAAP. FFO and AFFO do

not represent cash flows from operations as defined by U.S. GAAP, are not indicative of cash available to fund all cash flow needs and liquidity, including our ability to pay distributions and should not be considered as alternatives to net income, as determined in accordance with U.S. GAAP, for purposes of evaluating our operating performance. Other REITs may not define FFO in accordance with the current NAREIT definition (as we do) or may interpret the current NAREIT definition differently than we do and/or calculate AFFO differently than we do. Consequently, our presentation of FFO and AFFO may not be comparable to other similarly titled measures presented by other REITs.

The below table reflects the items deducted or added to net loss in our calculation of FFO and AFFO for the years ended December 31, 2013, 2012 and 2011 and on a pro forma basis for the year ended December 31, 2013 (amounts in thousands). Amounts are presented net of any non-controlling interest effect, where applicable.

| | Year Ended December 31, | | | ARCP Pro Forma |
| --- | --- | --- | --- | --- |
| | 2013 | 2012 | 2011 | |
| Net loss attributable to stockholders | $(406,505) | $(39,399) | $ (4,699) | $228,632 |
| (Gain) loss on held for sale properties | (14) | 600 | 815 | (55,041) |
| Depreciation and amortization | 156,971 | 40,700 | 2,111 | 604,479 |
| FFO | (249,548) | 1,901 | (1,773) | 778,070 |
| Acquisition related | 23,295 | 42,761 | 3,898 | — |
| Merger and other transaction related | 256,662 | 2,603 | — | — |
| (Gain) loss on investment securities | (40) | (534) | — | 3,537 |
| Loss on derivative instruments, net | 67,937 | — | 2 | 69,111 |
| Interest on convertible obligation to preferred investors | 10,802 | — | — | — |
| Interest premiums and discounts on debt, net and settlement of convertible obligation to preferred investors | 12,072 | — | — | 11,843 |
| Amortization of above- and below-market lease assets and liabilities | (246) | 108 | — | 2,744 |
| Amortization of deferred financing costs | 11,183 | 1,985 | 186 | 16,473 |
| Straight-line rent | (8,791) | (2,145) | (229) | (65,947) |
| Non-cash equity compensation expense | 34,935 | 1,191 | 191 | 34,935 |
| Operating fees to affiliate | 5,654 | 212 | — | $ 63,002 |
| AFFO | $ 163,915 | $ 48,082 | $ 2,275 | $913,768 |

27.     As reported in the Company's February 27, 2014 earnings press release, filed

with SEC on Form 8-K, the Company "today announced record operating results for the full year

ended December 31, 2013," with operating highlights including increased revenues over 260%

to $240.5 million as compared to $66.8 million in 2012; improved AFFO available to common

stockholders by 240% to $163.9 million; increased AFFO per diluted share by over 80% to

$0.86; invested $3.4 billion in 676 acquired real estate properties; closed on (i) $2.3 billion

acquisition of American Realty Capital Trust III, Inc., (ii) $2.2 billion acquisition of CapLease

and (iii) the $774.0 million acquisition of the GE/Trustreet portfolio, successfully integrating all

acquisitions into the Company's property portfolio.

28.     On May 8, 2014, the Company announced its financial results for the quarter

ended March 31, 2014, on Form 10-Q filed with the SEC (the "First Quarter 10-Q" herein),

signed and certified by defendants Schorsch and Block.  The First Quarter 10-Q states:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities
> Exchange Act, as amended (the "Exchange Act"), we, under the
> supervision and with the participation of our Chief Executive Officer
> and Chief Financial Officer, carried out an evaluation of the
> effectiveness of our disclosure controls and procedures (as defined in
> Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of
> the period covered by this Quarterly Report on Form 10-Q and
> determined that the disclosure controls and procedures are effective.
>
> No change occurred in our internal controls over financial reporting
> (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act)
> during the three months ended March 31, 2014 that has materially
> affected, or is reasonably likely to materially affect, our internal
> controls over financial reporting.
> * * *
> The below table reflects the items deducted or added to net loss in
> our calculation of FFO and AFFO for the three months ended
> March 31, 2014 and 2013 (in thousands). Amounts are presented net
> of any non-controlling interest effect where applicable.

12

|  | Three Months Ended March 31, | |
| --- | --- | --- |
|  | 2014 | 2013 |
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ (332,313) | $ (141,163) |
| Gain on disposition of property | (2,979) | — |
| Depreciation and amortization of real estate assets | 150,899 | 26,731 |
| Depreciation and amortization of real estate assets in unconsolidated joint ventures | 602 | — |
| FFO | (183,791) | (114,432) |
| Acquisition related | 11,884 | 10,327 |
| Merger and other transaction related | 222,192 | 137,769 |
| Gain on investment securities | — | (451) |
| Loss on derivative instruments, net | 20,197 | 5 |
| Amortization of premiums and discounts on debt and investments | (18,325) | — |
| Dividends attributable to convertible preferred shares | 5,053 | — |
| Dividends attributable to participating securities | 936 | — |
| Amortization of above- and below-market lease assets and liabilities, net | 358 | 68 |
| Amortization of deferred financing costs | 37,940 | 1,243 |
| Other amortization and depreciation | 14,374 | 22 |
| Loss on early extinguishment of debt | 20,819 | — |
| Straight-line rent | (7,520) | (1,510) |
| Non-cash equity compensation expense | 22,510 | 881 |
| Proportionate share of adjustments for unconsolidated joint ventures | 762 | — |
| AFFO | $ 147,389 | |

29.    As reported in the Company's May 8, 2014 earnings press release, filed with SEC on Form 8-K, the Company's first quarter 2014 results included: increased revenue to a record $320.6 million, up 647% compared to the same period a year earlier; increased AFFO available to common stockholders to $147.4 million, up 334.6% compared to the same period a year earlier; $1.03 billion of acquisitions on the balance sheet, comprised of 224 properties in 78

individual transactions at an average cap rate of 8.24%, with another over $700 million already closed or under contract for the second quarter; and investment grade balance sheet, including secured investment grade rating from S&P and a reaffirmation of investment grade from Moody's. Commenting on the results, defendant Schorsch stated, "I am very pleased with our results for the first quarter of the year. We had a record quarter with earnings coming exactly in line with our expectations of $0.26 AFFO per share, consistent with our previously stated guidance for the year."

30.    On July 29, 2014, the Company announced its financial results for the quarter ended June 30, 2014, on Form 10-Q filed with the SEC (the "Second Quarter 10-Q" herein), signed and certified by defendants Schorsch, Block and McAlister. The Second Quarter 10-Q provides as follows:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.
>
> No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the six months ended June 30, 2014 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

32.    The Second Quarter 10-Q provides as follows:

> The below table reflects the items deducted or added to net loss in our calculation of FFO and AFFO for the three and six months ended June 30, 2014 and 2013 (in thousands).

| | Three Months Ended | Six Months Ended June |
|---|---|---|

| | June 30, | | 30, | |
|---|---|---|---|---|
| | 2014 | 2013 | 2014 | 2013 |
| Net loss (in accordance with U.S. GAAP) | $ (43,265) | $ (72,433) | $ (363,920) | $ (214,028) |
| Dividends on Series F Preferred Stock | (17,773) | — | (35,416) | — |
| Adjusted net loss | (61,038) | (72,433) | (399,336) | (214,028) |
| Gain on disposition of property | (1,510) | — | (4,489) | (14) |
| Depreciation and amortization of real estate assets | 234,089 | 33,811 | 384,988 | 60,564 |
| Depreciation and amortization of real estate assets in unconsolidated entities | 3,120 | — | 3,722 | — |
| FFO | 174,661 | (38,622) | (15,115) | (153,478) |
| | | | | |
| Acquisition related | 8,453 | 37,119 | 20,337 | 47,446 |
| Merger and other transaction related | 13,286 | 6,393 | 235,478 | 144,162 |
| Gain on investment securities | — | — | — | (451) |
| (Gain) loss on derivative instruments, net | (21,926) | 31,174 | (1,729) | 31,179 |
| Amortization of premiums and discounts on debt and investments | (3,487) | — | (21,812) | — |
| Amortization of above- and below-market lease assets and liabilities, net | 2,133 | 68 | 2,491 | 136 |
| Net direct financing lease adjustments | 136 | — | 527 | — |
| Amortization and write off of deferred financing costs | 11,342 | 2,271 | 61,256 | 3,514 |
| Other amortization and depreciation | 24,750 | — | 39,124 | — |
| Loss on early extinguishment of debt | 3,985 | — | 24,804 | — |
| Straight-line rent | (17,413) | (3,059) | (24,933) | (4,568) |
| Non-cash equity compensation expense | 9,338 | 3,458 | 31,848 | 4,339 |
| Proportionate share of adjustments for unconsolidated joint ventures | 20 | — | 782 | — |
| AFFO | $ 205,278 | $ 38,802 | $ 353,058 | $ 72,279 |

33.     As reported in the Company's July 29, 2014 earnings press release, filed with

SEC on Form 8-K, the Company's second quarter 2014 results included: increased revenues to

$382.0 million, up 595.2% compared to the same period a year earlier; increased AFFO to

$205.3 million, up 429.0% compared to the same period a year earlier, and increased AFFO per share to $0.24, up 26% compared to the same period a year earlier; pro form normalized estimated AFFO run rate estimated as of year-end 2014 of $1.18 - $1.20 per share including 2014 completed and announced transactions. Commenting on the results, defendant Kay stated, "The daily execution of these collective actions allows us to maintain our 2014 AFFO per share guidance of $1.13 - $1.19, while significantly de-leveraging the balance sheet and maximizing value for our stockholders."

34.    The Individual Defendants' certifications, including pursuant to Sarbanes-Oxley, of ARCP's affected financial statements provided, in part, the following representations:

> The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
> (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted                        accounting                        principles;
>
> (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and
>
> (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal

quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

35.     Defendants' statements referenced above in ¶¶25-34 were each materially false and misleading when made because they misrepresented or failed to disclose the following material adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     income and AFFO recognized during the affected periods should not have been recognized or should not have been recognized during the periods in which it was recognized;

(b)     the Company's previously issued consolidated financial statements for the affected periods should not be relied upon;

(c)     the Company's financial statements for the affected periods were materially false and misleading and violated Generally Accepted Accounting Principles and/or ARCP's publicly disclosed policy of revenue recognition;

(d)     the Company's financial statements and SEC filings on Forms 10-Q and

10-K for the affected periods failed to disclose then presently known trends, events or uncertainties associated with the Company's revenues that were reasonably likely to have a material effect on ARCP's future operating results;

(e)    the Company's disclosure controls and its disclosure controls and procedures over financial reporting were materially deficient and its representations concerning them during the Class Period, including certifications issued by Defendants, were materially false and misleading; and

(f)    as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company's financial performance and outlook during the Class Period.

36.    On October 29, 2014, the Company issued a press release announcing the conclusion of its Audit Committee, that the Company's previously issued financial statements and other financial information contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013 and Quarter Reports on Form 10-Q for the fiscal periods ended March 31, 2014 and June 30, 2014, and the Company's earnings releases and other financial communications for these periods, should no longer be relied upon.  The Company reported that it identified potential modifications to its previously issued financial statements, including $11,974,000 for reductions in adjusted funds from operations ("AFFO") for the three months ended March 31, 2014, and $10,869,000 for reductions in non-controlling interest on a gross basis for the three months ended June 30, 2014.

37.    According to the October 29, 2014 press release, the Audit Committee made its determination that ARCP's financial statements should no longer be relied upon based on preliminary findings from an Audit Committee investigation, assisted by independent counsel

and forensic experts, commenced upon learning of reports on September 7, 2014 concerning accounting issues.

38.    The October 29, 2014 press release reported that the preliminary findings from the Audit Committee investigation were reported to the Company's senior management on October 24, 2014 and that:

> [b]ased on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period. The Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

39.    The Company's October 29, 2014 press release announced that Defendants Block and McAlister resigned effective immediately, and that the Company is re-evaluating its financial reporting controls and procedures, and intends to make the necessary changes to its control and procedures to remediate any control deficiencies that are identified through the Audit Committee's investigation. The Company reported that it will work with the Audit Committee and the Audit Committee's independent advisors to determine the adjustments required to be made to the Company's previously issued financial statements, including the calculation of AFFO, as expeditiously as possible, and that, upon completion of this process, which could identify further required adjustments in addition to those discussed above, the Company will restate prior financial statements and amend its prior periodic filings to the extent required and update its earnings guidance at that time. The Company will file its Quarter Report on Form 10-Q for the period ended September 30, 2014 after the amended filings have been made.

40.    According to the Company's October 29, 2014 press release, the Company's has identified potential adjustments to the reported net loss and adjusted funds from operations ("AFFO"):

> Based on the preliminary findings of the investigation, the Company has identified the potential adjustments shown on the attached financial table to the Company's reported net loss in accordance with U.S. GAAP for the three and six months ended June 30, 2014 and to reported AFFO for the three months ended March 31, 2014 and the three and six months ended June 30, 2014. The Company notes that, in calculating AFFO for the first quarter of 2014, the company reported non-controlling interests on a net basis, while in the second quarter of 2014, as permitted, the Company reported non-controlling interests on a gross basis (which it will continue to do in calculating AFFO in future periods). The weighted average number of shares used in calculating AFO differs depending on whether the net or gross method is used (but does not change for purposes of calculating net loss per share in accordance with U.S. GAPAP. The investigation is ongoing and there can be no assurance that the potential adjustments set forth in the attached financial table will not change based upon the financial results of the investigation, and any such change could be material.
>
> * * *

Potential Adjustments

Amounts in Thousands

(except per share amounts)

| AFFO (Presented on a Net Basis): | Three Months Ended March 31, 2014 |
|---|---|
| AFFO - Originally Reported | $     147,389 |
| Preliminary Adjustments | (17,638) |
| AFFO - Adjusted | $     129,751 |
| Weighted Average Shares, Fully Diluted - Originally Reported | 573,728 |
| AFFO Per Share - Originally Reported | $     0.26 |
| Results of Preliminary Adjustments to AFFO | $     (0.03) |
| AFFO per Share - Adjusted | $     0.23 |

| AFFO (Presented on a Gross Basis): | Three Months Ended March 31, 2014 | | Three Months Ended June 30, 2014 | Six Months Ended June 30, 2014 |
|---|---|---|---|---|
| AFFO - Originally Reported | $     147,780 | (1) | $     205,278 | $     353,058 |
| Preliminary U.S. GAAP Adjustments | - | | (9,242) | (9,242) |

| | | | | | |
|---|---|---|---|---|---|
| Preliminary Adjustments - AFFO Only | | (11,974) | | (1,627) | (13,601) |
| AFFO - Adjusted | $ | 135,806 | $ | 194,409 | $ 330,215 |
| Weighted Average Shares, Fully Diluted - Originally Reported | | 573,728 | | 869,094 | 722,118 |
| Adjusted for Gross Basis | | 22,044 | | - | 11,022 |
| Weighted Average Shares, Fully Diluted – Adjusted | | 595,772 | | 869,094 | 733,140 |
| AFFO Per Share - Originally Reported | $ | 0.26 | $ | 0.24 | $ 0.49 |
| Results of Preliminary Adjustments to AFFO | $ | (0.03) | $ | (0.01) | $ (0.04) |
| AFFO per Share - Adjusted | $ | 0.23 | $ | 0.22 | $ 0.45 |

*(1) Represents AFFO as reported for the six months ended June 30, 2014 less AFFO as reported for the three months ended June 30, 2014*

| U.S. GAAP EPS Calculation | Three Months Ended March 31, 2014 | | Three Months Ended June 30, 2014 | | Six Months Ended June 30, 2014 |
|---|---|---|---|---|---|
| Net Loss Attributable to Common Stockholders - Originally Reported | $ (332,313) | | $ (63,419) | | $ (395,732) |
| Preliminary U.S. GAAP Adjustments | - | | (9,242) | | (9,242) |
| Adjusted Net Loss Attributable to Common Stockholders | $ (332,313) | | $ (72,661) | | $ (404,974) |
| Basic and Diluted Weighted Average Shares - Originally Reported | 547,782 | | 815,741 | | 682,502 |
| U.S. GAAP EPS - Originally Reported | $ (0.61) | | $ (0.08) | | $ (0.58) |
| Results of Preliminary Adjustments to U.S. GAAP | $ - | | $ (0.01) | | $ (0.01) |
| U.S. GAAP EPS - Adjusted | $ (0.61) | | $ (0.09) | | $ (0.59) |

41.     In response to these announcements, the price of ARCP shares declined from $12.37 prior to the announcements, to $7.97 per share, representing a decline of 35.5%, to close on October 29 at $10.00 per share, representing a decline of 19%, on extremely heavy volume.

42.     The market for ARCP common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, ARCP common stock traded at artificially inflated process during the Class Period. Plaintiff and the other members of the Class purchased ARCP common stock relying upon the integrity of the market price of ARCP common stock and market information relating to ARCP, and have been damaged thereby.

43.     During and investor conference call conducted by ARCP at 3:00 p.m. on October 29, 2014, defendant Kay, the Company's CEO, stated, as reported in *The Wall Street Journal* on October 30, 2014, that "the second-quarter number was based on a calculation made 'in order to conceal the error from the first quarter.'"  Defendant Kay also reportedly stated that the Company will look to sell assets and buy back Company stock.  Referring to the Company's internal controls, "[t]here were also procedures and implementation items that have surfaced out of the investigation."

44.     The Company's common stock experienced several analyst downgrades on October 29, 2014, including by analysts at JP Morgan Chase & Co. which placed a $10.00 price target on the stock.

45.     The October 30, 2014 *Wall Street Journal* article reported in connection with ARCP's October 29, 2014 announcement that the SEC opened an inquiry into ARCP's financial accounting, reporting that a "coverup … forced the resignations of two top executives."  According to the October 30, 2014 *Wall Street Journal* article:

> American Realty Capital Properties Inc., the primary holding of property mogul Nicholas Schorsch, said in a securities filing that it asked its chief financial officer and chief accounting officer to resign after determining the company had overstated a measure of income in the first quarter, and that executives chose not to correct the error in the second quarter.  Shares of three other companies overseen by Mr. Schorsch also fell.
>
> The Securities and Exchange Commission intends to launch an inquiry into the accounting irregularities, according to a person familiar with the matter.

46.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ARCP common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as

set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

47.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about ARCP's business and operations.  These material misrepresentations and omissions had the cause and effect of creating in the market an unrealistically positive assessment of ARCP and its business and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

Additional Scienter Allegations

48.     As alleged herein, Defendants acted with scienter in that Defendants knew that the above-referenced public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws, including by signing and/or certifying the Company's SEC filings for the affected periods.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding ARCP, their control over,

and/or receipt and/or modification of ARCP's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ARCP, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

49.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of ARCP common stock and operated as a fraud and deceit on Class Period purchasers of ARCP common stock by failing to disclose and misrepresenting the adverse facts detailed herein. As Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of ARCCP common stock declined significantly as the prior artificial inflation came out of the Company stock price.

50.     As a result of their purchases of ARCP common stock during the Class Period, Plaintiff and the other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused ARCP common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $14.96 per share on February 28, 2014. As a result of Defendants' wrongful acts and omissions alleged herein, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other members of the Class have suffered significant losses and damages.

51.     By concealing from investors the adverse material facts detailed herein, Defendants presented a misleading picture of ARCP's business and operations.  When the truth about the Company was revealed to the market, the price of ARCP common stock fell significantly.  This decline removed the inflation from the price of ARCP common stock,

causing real economic loss to investors who had purchased ARCP common stock during the Class Period.

52.   The decline in the price of ACRP common stock after the corrective disclosure came to light was a direct result of the nature and extend of Defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in ARCP common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic o industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

53.   The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of ARCP common stock and the subsequent significant decline in the value of ARCP common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

54.   At all relevant times, the market for ARCP common stock was an efficient market for the following reasons, among others:

(a)   ARCP common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)   As a regulated issuer, ARCP filed periodic public reports with the SEC and the NASDAQ;

(c)   ARCP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with financial press and other similar reporting services;

(d)     ARCP was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

(e)     The price of ARCP securities reacted to information disseminated about the Company.

55.     As a result of the foregoing, the market for ARCP common stock promptly digested current information regarding ARCP from all publicly available sources and reflected such information in the prices of the common stock.  Under these circumstances, all purchasers of ARCP common stock during the Class Period suffered similar injury through their purchase of ARCP common stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made

untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

59.     Plaintiff and the other Class members suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ARCP securities and suffered economic loss when the price of ARCP securities declined as corrective information entered the market. Plaintiff the other Class members would not have purchased ARJCP common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their purchases of ARCP common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against All Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of ARCP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of ARCP, and their ownership of ARCP stock, the Individual Defendants had the power and authority to engage in the wrongful conduct complained of herein.

63.     By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.       Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel to represent the Class;

B.       Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.       Awarding Plaintiff and the other members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.       Such other and further relief as the Court may deem just and proper.

just and appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: November ___3___, 2014

STULL, STULL & BRODY

_Jason D'Agnenica_ (JD-9340)
Howard Longman
Jason D'Agnenica
6 East 45th Street
New York, NY 10017
(212) 687-7230 (*telephone*)
(212) 490-2022 (*facsimile*)
hlongman@ssbny.com
jasondag@ssbny.com

*Counsel for Plaintiff*

## CERTIFICATION

Berney Harris ("Plaintiff") hereby states:

1. Plaintiff makes this certification pursuant to the Private Securities Litigation Reform Act of 1995.

2. Plaintiff has reviewed the complaint to be filed on his behalf and on behalf of a proposed Class (the "Complaint") and has authorized its filing on his behalf.

3. Plaintiff did not purchase any securities of American Realty Capital Properties, Inc. ("ARCP") at the direction of his counsel or in order to participate in this private action.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in ARCP securities during the class period set forth in Complaint, or between February 27, 2014 through October 29, 2014, inclusive, are as follows: On July 18, 2014 he purchased 600 shares of common stock for $12.50 per share. On May 21, 2014 he purchased 7 $12 calls expiring 1/17/15 for $0.73 and on September 26, 2014 he purchased 5 $11 calls expiring1/17/15 for $1.42.

6. Plaintiff has not served nor sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rate share of any recovery, or as ordered or approved by the court including the award of a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury the foregoing is true and correct.

Executed this 3rd day of November 2014

Berney Harris